Plaintiff states that at the time the Defendants were served their copies of the summons and complaint with "Addendum" along with U.S. District court for the District of Arizona's General Order No. 17-08(D.Ariz.APR.14,2017) regarding mandatory initial discovery responses.

Plaintiff states that his exhibits will be served upon the Defendant's pursuant to FRCVP Rule 5(a)(b)(c) and disclosed under the above cited General Order No. 17-08.

## **Judgement, Cost, and Awards**

Plaintiff states that pursuant to FRCVP Rule 54.1(d), the prevailing party shall be entitled to an award of all costs and pursuant to FRCVP Rue 54.2(a), the prevailing party may be entitled to an award of reasonable Attorney's fees incurred in pursuing this action.

Court costs as actually incurred are chargeable to Defendant's:

Wherefore, Plaintiff respectfully requests the Court enter judgment against Defendant's as follows:

1. In the principal to amount of $38,000,000.00

    A. $12,000,000.00 would be the principal amount for Maricopa County Government, Maricopa County Sheriff's Office, Sheriff Paul Penzone, and Maricopa County Sheriff's Detective Jason Bentzel;

Notice of Claim; Counts 1 Through 16.

B. $11,000,000.00 would be the principal amount for the City of Goodyear Municipal Corporation, Goodyear Police Department Chief of Police Jerry Geier and Goodyear Police Sergeant Justin Hughes. Notice of Claim 1; Counts 17 Through 25.

C. $15,000,000.00 would be the principal amount for the City of Goodyear Municipal Corporation and Goodyear Police Department Chief of Police Jerry Geier.: Notice of Claim 2; Count 26

2. For Plaintiffs costs and disbursement incurred herein

3. For statutory interest rate pursuant of 28 U.S.C. §1961(a) on interest of The principal amount of $38,000,000.00 on the amount of the judgment After judgment is entered; and

4. Such other and further relief as the court deems just and equitable in the circumstances.

## **Other Cases**

Plaintiff has filed one lawsuit as a prisoner.

Jose Roman, Jr. vs. Traveler's Home and Marine Insurance Company

US District Court for District of Arizona, No. CV17-08151-PCT-JAT

RESULT: Plaintiff dismissed complaint through settlement agreement

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _26_ day of _December_ , _2017_ .

_____

Jose Roman Jr. Plaintiff- Pro Se

# Addendum

On May 9, 2013 at about 7:30 a.m., Jose Roman Jr spoke briefly with Sgt. Justin Hughes at the Goodyear Police Administrative office located within the Venida Complex.

Jose Roman Jr told Sgt. Hughes that the night before, that he, the plaintiff had an argument with his 22 year old step-daughter, Daisy Asriyan, for she had been caught cheating with her sister's husband and to divert attention away from herself, she began to accuse the plaintiff of an 8 year old alleged sex act and threatened to contact the plaintiff's supervisor, so Plaintiff, Jose Roman Jr, told her to call.

Later, that same morning, Daisy Asriyan contacted the Goodyear Police Department and made allegations. The Goodyear Police Department determined that the alleged criminal acts were said to have occurred within the jurisdiction of the Maricopa County Sheriff's Office. Therefore, the Goodyear Police contacted the Maricopa County Sheriff's Office who then received the complaint reported by Daisy Asriyan. The Maricopa County Sheriff's Office documented the complaint under DR 13-088305 and was investigated by Detective Bentzel. (See Exhibit 1)

The Goodyear Police Department commenced Administrative action through an internal investigation against the Plaintiff Jose Roman Jr.

The internal investigation was reported under IA 2013-0012, and investigated by Sgt. Justin Hughes. (See Exhibit 2)

On May 10, 2013, the Plaintiff, Jose Roman Jr, was interviewed by Sheriff Detective Bentzel during which time the Plaintiff, Jose Roman Jr stated his side against the false allegations.

During and after the interview, the Plaintiff, Jose Roman Jr was told by Sheriff's Detective Bentzel that he would perform in depth re-interviews with the plaintiff's wife, Stacy, and family members, especially with Tessa, Donna, and Stacy in regards to the foot rub allegation for Plaintiff, Jose Roman Jr recalled those three were present on November 1, 2003 and observed the foot rub and they could verify that Daisy falsely alleged the sex related act. The Plaintiff, Jose Roman Jr recalled the foot rub event occurring much differently and only once.

Plaintiff, Jose Roman Jr knew that Daisy had created the lie, as she is known to do in all her stories that she tells people. (See Exhibits 16.1 through 16.14.)

Plaintiff, Jose Roman Jr and Stacy's first date, took place on Halloween night, October 31, 2003. On this first date, Plaintiff, Jose Roman Jr never entered Donna Orsburn's townhome. The second date occurred the following evening (November 1, 2003) at Donna Orsburne's townhome, located at 4338 West Ocotillo Drive, in Glendale, AZ. Plaintiff, Jose Roman Jr recalls Stacy, Donna, Daisy, Tessa, and Nicholas being present on the second date, for it included a home cooked dinner.

The meal included a bacon food dish that Plaintiff, Jose Roman Jr was unable to eat, for he was trying to control his Pre-Diabetes and Triglyceride levels.

When Plaintiff, Jose Roman Jr was asked why he would not eat the bacon dish, he explained his medical issue and how he had been having left foot pain, possibly beginning signs of Diabetic Nerve Damage. Donna then told the Plaintiff, Jose Roman Jr that her recently deceased husband, Rob Orsburn, had also experienced similar foot pain, so for relief he would go with her to get foot pedicure-massages during times when she would go to have her nails done. It was at this point of the conversation when Daisy spoke out and said, "I'll massage your feet." Plaintiff replied saying no.

Either Donna or Stacy said to Plaintiff, Jose Roman Jr to go ahead and let Daisy massage his feet. It was at this point when Tessa (age 9) spoke out and said she wanted to help massage plaintiff's feet. Plaintiff, Jose Roman Jr removed his shoes, leaving his socks on.

Plaintiff, Jose Roman Jr extended his right foot downward since Tessa was seated on the floor. Plaintiff, Jose Roman Jr extended his left foot outward and placed his heel (toes upward) on Daisy's thigh where she positioned his foot. Daisy was seated on the sofa.

The foot rub event was in plain view of Donna and Plaintiff Stacy Roman. The foot massage lasted about five minutes for Tessa spoke out by saying the plaintiff's feet smelled like Beanie Babies.

Plaintiff, Jose Roman Jr asked Stacy what Tessa had meant. Plaintiff Stacy Roman said Tessa was saying plaintiff's feet smelled. Plaintiff, Jose Roman Jr immediately put his

shoes back on ending the foot massage. It was a kind of embarrassing moment yet laughable by all and Plaintiff's recalled it well, for it was the first day with the Stacy Day family. (Plaintiff, Jose Roman Jr and Stacy married 8 months later.)

Plaintiff, Stacy Roman further explained that they collected Beanie Baby characters that were made of cloth and recently some had got wet, molded, causing them to smell bad, so Stacy said Tessa related the smell of Plaintiff, Jose Roman Jr's feet to the smell of the mold.

Plaintiff's clearly recall the scene where the foot massages took place in the family room, at the townhome of Donna Orsburn. The Plaintiff, Jose Roman Jr further recalled that he and Stacy were seated on chairs next to each other, for she was to the right side about 1 foot away. Donna Orsburn was seated a little forward and diagonally from Stacy's right side. Tessa (age 9) was seated on the floor facing her mother and plaintiff. Daisy was seated on a sofa and faced forward, yet diagonally from plaintiff's left side, in view of Donna, Stacy, and Tessa (see Exhibit5, 2017 artist depiction). As stated above, Plaintiff, Jose Roman Jr had good reason for requesting that Sheriff's Detective Bentzel interview above witnesses.

On July 1, 2013, Plaintiff, Jose Roman Jr was at home on Administrative leave subject to being called to the Police Department for Administrative reasons, when Sgt. Hughes telephoned and asked Plaintiff, Jose Roman Jr to meet with him at the Goodyear Police sub-station to sign papers. Plaintiff, Jose Roman Jr drove to the sub-station and

parked his car just outside the entrance doors when Sgt. Hughes approached and immediately asked if he had a gun on his person. Plaintiff replied no. Sgt. Hughes searched Plaintiff, Jose Roman Jr's person and then led the plaintiff into the entrance lobby and then into an adjacent room where three Sheriff's Deputies and Detective Bentzel where he was then aggressively handcuffed and arrested.

The Plaintiff, Jose Roman Jr was unarmed and had been cooperating in the ongoing investigations, communicating daily with Lt. James Hernandez and at no point did the plaintiff pose a threat to law enforcement in the slightest degree to justify why Sgt. Hughes felt the need to create a rouse for a warrantless arrest upon the plaintiff, and at plaintiff's place of employment. By doing so, Sgt. Hughes became an agent in the criminal investigation, therefore he no longer was able to perform a non-bias administrative investigation.

Plaintiff, Jose Roman Jr was then placed into a Sheriff's patrol car, taken for an interview and booked into the Maricopa County Jail on 3 counts of Child Molestation and 2 counts of Sexual Conduct With a Minor (See exhibit 6).

On July 9, 2013, the plaintiff was indicted by the Maricopa County Grand Jury on 12 counts of sex offenses (See exhibits 7 Grand Jury transcript).

The Plaintiff, Jose Roman Jr and Stacy Roman appeared for numerous official proceedings and one of significant importance was the settlement conference held on September 12, 2014 before commissioner Jeffrey Rueter (Hereafter referred to as

"Court").  Plaintiff, Jose Roman Jr appeared with private defense counsel, Tracey

Westerhausen.  For the State of Arizona, appeared Prosecutor Sara MicFlikier (Hereafter

referred to as "State").  The Settlement Conference was transcribed (See exhibit 10).

During the settlement conference, Plaintiff, Jose Roman Jr became very

concerned, as well as suspicious on how it could have been that the "State" received

false Count 1, and from what source such as the Goodyear Police IA report, the Sheriff's

report or something else for it contributed to the plaintiff's indictment on Count 1,

Sexual Conduct With a Minor at the victim age of 12, that could possibly carry a life

sentence with no possibility of release from prison until 35 years served.  The Settlement

Conference plea negotiation was strongly driven by Count 1, for the "State" based its

plea offer based from 35 years, and plea offered almost half, being 17 years with no

means of going lower towards a 10 year minimum.  Plaintiff felt the impact that Count 1

had on the case and himself.

Plaintiff suspected that the Maricopa County Attorney's Office command was

behind the high plea offer and knew that if the Goodyear Police IA report was in their

control, it would surely prejudice the plaintiff.

On February 19, 2015, Plaintiff, Jose Roman Jr was sentenced to a prison term of

18 years on Count 2, Molestation of a Child and probation on Counts 3 and 12,

Attempted Molestation of a Child.

In 2015, plaintiff, through private counsel, filed Post Conviction Relief pursuant to

Arizona Rules of Criminal Procedures, Rule 32.

In the month of June 2016, the Plaintiff, Jose Roman Jr in Propria Persona, filed Petition For Review of Post-Conviction Relief with the Court Of Appeals of Arizona, Division 1, under case no. 1C-CR16-0376PRPC.

In the month of January 2017, Plaintiff, Jose Roman Jr in Propria Persona received his case reports, the Goodyear Police IA report, Interview CD's and DVD's, court documents, and the Sheriff's Departmental report 13-088305. These documents, reports, and records provided the plaintiff with his first opportunity to read them. The plaintiff was very troubled and in disbelief to read how horribly the victim lied about sex acts, which had never occurred. In addition, the Plaintiff, Jose Roman Jr with more than 20 years of experience in law enforcement, and 13 years in Criminal Investigation was not surprised to find that the Sheriff's report and the Goodyear Police IA report had been documented with false statements, cover-up of events, and concealment of exculpatory statements that could explained plaintiffs defense before the Maricopa County Attorney's Office, their command and plaintiff's defense counsel.

Plaintiff, Jose Roman Jr first focused on the Goodyear Police IA report and immediately saw the very first documented entry was in Section 1 Complaint/Allegations, which listed the complaint date of March 25, 2013, when in fact, it was actually on May 9, 2013. The incorrect complaint date suggests that, each time Sgt. Hughes would have opened the Goodyear Police IA Pro System, he would have had

to notice the incorrect date. Therefore, it appears that Sgt. Hughes documented after the fact, Thereby, showing that he did not investigate and document in the IA Report in a timely manner with due diligence and for this reason, falsehoods and such were documented and are now evident.

Plaintiff, Jose Roman Jr also discovered in Section 1 Complaint/Allegations that Sgt. Hughes failed to document the 5 allegations as reported by the victim in comparison to the Sheriff's report 13-088305, that listed 5 allegations.

Plaintiff, Jose Roman Jr states that it appears Sgt. Hughes waited approximately 30 days to document the allegations, for he used an Indictment form based from the July 9, 2013 Grand Jury proceeding. In doing so, he documented 12 Counts in Section 1 Complaint/Allegations that subsequently prejudiced the Plaintiff, Jose Roman Jr.

Plaintiff's assertion to the above claims are supported by the fact for a copy of the Indictment was placed as evidence as shown in Section 6 Evidence. For this reason the Indictment copies are material physical evidence and are a true record based from findings of an official Grand Jury proceeding. (See Exhibit 3, Indictment)

Sgt. Hughes intentionally introduced false words and false statements that altered each count that was listed and by doing so, affected the verity of the Indictment as it pertained to the Goodyear Police IA report and it's administrative purpose. The above acts are documented in each Indictment allegation, specifically in the parenthesis to Wit: Sections are as follows:

Allegation 1, Count 1

Indictment reads:  "(To Wit: Penile Vaginal-when the defendant was 42 and the victim 12.)"

IA Report reads:

"(To Wit: Detective Roman penetrated the victims Vagina with his Penis.  The victim was 12)."

Allegation 2, Count 2

Indictment reads:

"(To Wit: Foot rub in Glendale-First time)."

IA Report reads:

"(To Wit: Detective Roman touched the victims Vagina with his foot while the victim was giving him a      foot rub.  This was the first foot rubbing incident that occurred in Glendale)."

Allegation 3, Count 3

Indictment reads:

"(To Wit: Foot rub in Glendale-last time)."

IA Report reads:

"(To Wit: Detective Roman touched the victims Vagina with his foot while the victim was giving him a

Foot rub.  This was the second foot rubbing incident that occurred in Glendale)."

Allegation 12, Count 12

Indictment reads:

"(To Wit: Digital/Vagina in Tonopah when victim was 14)."

IA Report reads:

"(To Wit: Detective Roman digitally penetrated the victims Vagina. This incident occurred in Tonopah when the victim was 14)."

Plaintiff, Jose Roman Jr hereby states the Count 1, Sexual Conduct With a Minor at the age of 12, was the major factor behind the prosecution and greatly prejudiced the plaintiff.

Plaintiff, Jose Roman Jr states that Superior Court of Arizona for Maricopa County dismissed Counts 1, 4, 5, 6, 7, 8, 9, 10, and 11.

Plaintiff, Jose Roman Jr states that the inaccurate words and statements that were altered in the Indictment to Wit: sections prejudiced the Plaintiff, Jose Roman Jr in the Goodyear Police Administrative proceedings as well as the ongoing official criminal proceedings with the Maricopa County Attorney's Office and with individuals and media that obtained the IA report through public record release.

Plaintiff states that Sgt. Hughes actions were done with criminal intent and in violation of ARS 13-2809A1, Tampering with Physical Evidence.

Plaintiff discovered in Section 2 Chronology of the Investigation that Sgt. Hughes concealed from the IA report and withheld from Sheriff's Detective Bentzel the fact that

it was the plaintiff who first spoke with Sgt. Hughes in person at the Goodyear Police

Department's Administrative Office around 7:30 a.m. on May 9, 2013. Plaintiff briefly

told Sgt. Hughes that he had an argument with his step-daughter over her being involved

in cheating with the husband of her sister. As a diversion, the stepdaughter/victim

began to accuse the Plaintiff, Jose Roman Jr of sex acts and threatened to contact his

Lieutenant, so Plaintiff told her to call. Sgt. Hughes said he would handle things and

would also notify the Chief of Police (Jerry Geier).

Plaintiff, Jose Roman Jr was well aware that Goodyear Police personnel are to

inform the Professional Standards Unit of any police contact or involvement off-duty.

Since Sgt. Hughes was the Professional Standards Unit Supervisor, he notified him.

Sgt. Hughes failed to document Plaintiff, Jose Roman Jr's initial contact with him.

Instead, Sgt. Hughes documented the first chronological event which reads,

"Complainant, Daisy Asriyan, makes initial complaint to the Goodyear Police

Department." The above true account was concealed from Section 3 Executive

Summary.

Plaintiff states that in Section 2 Chronology of the Investigation, at the July 1,

2013 entry, Sgt. Hughes falsely documented "PSU was made aware that Detective Joe

Roman was arrested and booked into jail for several counts of Molestation of a Child,

Sexual Conduct with a Minor, and Sexual Abuse of a Child Under the Age of 15." Sgt.

Hughes covered up the fact that he actually assisted in plaintiff's arrest while in his

Internal Investigation position.

Plaintiff states that in the second part of the July 1, 2013 entry, Sgt. Hughes falsely introduced the statement, "and sexual abuse of a child under the age of 15." The Sheriff's jail booking documents (See Exhibit 6), clearly show that Sgt. Hughes falsely introduced this statement, creating an additional criminal offense, for the jail booking documents list 3 Counts of Molestation of a Child and 2 counts of Sexual Conduct With A Minor. The jail booking documents does not list the "Sexual Abuse of a Child Under the Age of 15" as Sgt. Hughes documented.

The false introduction of words, statements and his cover up in regards to the July 1, 2013 entry and in the Executive Summary clearly reveal that Sgt. Hughes intentionally committed criminal acts in violation of ARS 13-2809.A1, A2, and 13-2311A.

Plaintiff discovered in Section 3 Executive Summary, that Sgt. Hughes falsely documented on page 6, paragraph 3 that reads "[Victim] stated she wanted to "press charges" and stated the abuse started when she was 12 years old and continued until she left her parents' house." Daisy stated Roman would "put his fingers inside me," and "these incidents occurred in Glendale, Tonopah, and other locations."

Sgt. Hughes documented in Section 6 Evidence, that the Goodyear Police Department held as evidence, the Sheriff's departmental report 13-088305, as well as all the CD's and DVD videos of the Sheriff's interviews. Sgt. Hughes also documented that he observed the interviews.

Sgt. Hughes had the ability to listen to the audio recordings, to have them transcribed and to impartially perform and administrative investigation and document his own accounts and findings. Instead in many instances, Sgt. Hughes plagiarized from the Sheriff's report and most specifically, the Sheriff's Booking Probable Cause Summary Addendum. (See Exhibit 6 Addendum.)

The Booking Addendum listed in its first paragraph the following: "On 05/09/2013 the now 22 year old victim came forward and reported that the beginning was when she was 12 years of age, the suspect Jose Jesus Roman Jr with a Date of Birth of 12/28/1960, molested her by placing his fingers into her vagina while she was asleep on the family couch. This incident was not reported to the Police at the time. Instead the victim was moved to the home of her Maternal grandmother where she remained until leaving home to get married."

The above quoted statements, specifically the first had been falsely reported by Sheriff's Detective Bentzel, for the statements given by the victim, the plaintiff and family members never spoke of or on any Sexual Conduct with a Minor at the age of 12, which became Count 1, for what was spoken was the allegation of Count 12, Sexual Conduct With a Minor at the age of 14. Therefore, Sheriff's Detective Bentzel falsely introduced Count 12 as Count 1 and Sgt. Hughes likewise did the same in the IA Report. Both in violations of ARS 13-2809A.1, A.2, and 13-2311A.

The interview between the victim and Sheriff's Detective Bentzel corroborates the

critical error of charging the Plaintiff Jose Roman Jr. with Count 1, Sexual Conduct with a

Minor at the age of 12. The Sheriff's report included their transcript of the victim

interview. The interview begins to speak on an alleged foot rub incident, later to be

charged in the Indictment as Count 2. It immediately became clear that there was never

a Count 1, Sexual Conduct with a Minor age 12, as revealed below.

Sheriff's transcript reads Q. Detective Bentzel- A. Victim

Lines 292 through 295

Q- "Okay, so the-the first incident is in your Grandmother's house in the living room.....?"

A- "Uh-huh."

Q- "...While you're massaging his feet... What's the next incident you recall having some

kind of reac-or interaction with (Joe) like this?"

A- "Uh, well besides him, like, grabbing like, brushing up against private parts that was

how-he was doing that frequently. Like accidentally brush up against us. Um I don't

know the exact dates but....."

Q- "I do...."

A- "....The next, like, serious thing was that it-again uh-huh  he made us ma-like massage

his back."

Lines 330 through 333

Q- "Okay, uh, other than massaging his back did he have any other contact with you at

this point? I mean he didn't..."

A- "No, he didn't touch me like that yet."

Lines 556-560 Reads

Q- "Okay-okay now everything that you just described to me this-that-at this point, the-the back massages, the rubbing his foot on your genitals, those kind of things, all of those occurred while you were staying with your grandmother……"

A- "Uh-hu."

Lines 562 through 567

Q- "….. in Glendale? Okay. When did you move from your Grandma's house to Tonopah?"

A- " Um, that was- well they started dating in October so it was the next year. Oh, wel wait, we didn't move straight to Tonopah. Then we moved to apartments in Avondale."

In the transcript between lines 555 through 567 it clearly shows that the victim never reported any sex act related to Count 1, Sexual Conduct with a Minor at the Age of 12 that justified Sheriff's Detective Bentzel to book the plaintiff into jail and to criminally charge him with Count 1, which under Arizona Law carries a life sentence.

Sgt. Hughes knew that Sheriff's Detective Bentzel falsely charged the plaintiff with Count 1 and covered it up by not notifying his Police command, the Maricopa County Attorney's Office or Plaintiff, Jose Roman Jr's defense counsel so that action could be taken to correct or dismiss the count. Instead, Sgt. Hughes proceeded in documenting

falsehoods and concealing the false count in the IA report knowing very well that his

actions were in violation of ARS 13-2311A, Fraudulent Schemes and practice; Willful

Concealment and ARS 13-2809A.1, A.2, Tampering with Physical Evidence.

For the above reasons, Sgt. Hughes falsely introduced and documented in the IA

report one additional criminal act as shown and listed on page 7 in the Bullet section.

(See Exhibit 2).

The first bullet reads, "Roman put his fingers inside [victims] Vagina while she was

sleeping on the couch in her family's residence in Tonopah."

The fifth bullet reads, "While [victim] was sleeping on the couch at the residence

in Tonopah [victim] awoke to Joe lying next to her with his hands under her clothing and

his fingers were inside her Vagina." The first bullet and fifth bullet speaks on the same

act, not as separate acts.

The second bullet reads, "Roman would rub [victims] Vagina over her clothing

with his foot while she was giving him a foot massage at the Glendale residence."

The interview between the victim and Sheriff's Detective Bentzel spoke of the

foot massage that was alleged by the victim.

Sgt. Hughes knowingly concealed from the IA report, the Maricopa County

Attorney's Office and Plaintiff's defense counsel the fact that in the Sheriff transcript, the

victim alleged an attempted vagina foot touch, especially as it pertains to Count 2, which

is the same count the plaintiff was sentenced to prison on. In the Sheriff's transcript at

the beginning on pages 3 and 4 it reads:

Lines 131 through 137

A-"And uh, it started with-well after he would come over to see my mom from work He'd take his shoes off and He'd ask me and my little sisters to rub his feet. So it started like that, like rubbing his feet and sitting on his lap and then well the **FIRST TIME** that he started getting kinda, like, going a little bit weird was- I was sitting on the floor rubbing his feet and he would, like, move his foot like he was doing it accidentally, like in between my legs and like, he would, like **TRY** to rub my vagina with his feet."

The victim's allegation of the foot rub event was not truthful. The Plaintiff, Jose Roman Jr knew that his wife Stacy, Mother-in-law Donna Orsburn and his step-daughter Tessa (Age 9 in 2003) were present on November 1, 2003 foot rub event and were seated and watching the entire time that lasted around 5 minutes, and not once did the Plaintiff Jose Roman, Jr's. foot touch the victim's vaginal region (which will be further explained herein.)

In the month of July 2013, Stacy Roman created a timeline of event document (See Exhibit 17). Stacy Roman also obtained voluntary written statements from family members (See Exhibit 16.1 through 16.14), which spoke on the life of the victim, and in some about the victim before the plaintiff knew the Day family, and more specifically, the victim's compulsive lying behavior.

On July 1, 2013, Plaintiff, Jose Roman Jr was arrested. Sgt. Hughes telephoned

Stacy Roman to ask her to drive to the Goodyear Police Estrella Substation to take possesion of Plaintiff, Jose Roman Jr's car. When Stacy arrived, plaintiff's keys were released to her, and per Stacy Roman, Sgt. Hughes told her he would contact her to follow up and to obtain information on timeline and events and to speak with her and others. Plaintiff, Stacy Roman states that Sgt. Hughes never contacted her at any time since July 1, 2013.

Plaintiff, Jose Roman Jr states that during his 18 months in custody at the county jail, Sgt. Hughes never attempted to jail house interview the plaintiff. Plaintiff, Jose Roman Jr states for the above reasons, the Internal Investigation is one sided, bias, and was falsely and inaccurately reported. Plaintiff, Jose Roman Jr believes that if he would have been interviewed, he would have spoken of Count 1, he would have been made aware of the false Count 1 that Sheriff's Detective Bentzel booked the plaintiff on and corrective action could have then been taken by Sgt. Hughes and by the Plaintiff, Jose Roman Jr.

Plaintiff states that the Molestation of a Child incident (Count 2), was also falsely alleged by the victim. Sgt. Hughes, who had a copy of the Sheriff Interview transcript of the victim, could have disclosed exculpatory information in the IA report, such as the fact the plaintiff did not commit Count 2, Instead Sgt. Hughes covered up for Sheriff's Detective Bentzel which had a major impact on the plea offer and the sentencing as it pertained to Count 2, Molestation of a Child, a class 2 Felony. The major statement

behind the cover up was that from the victim that is found in the Sheriff's victim

interview transcript on pages 3 and 4 lines 131 through 137 as saying, "Like between my

legs and like, he would, like **TRY** to rub my Vagina with his feet."

Plaintiff states that per ARS 13-705, Dangerous Crimes Against Children in the

First Degree for sub-section D, Molestation of a Child, requires a mandatory sentence to

a term of imprisonment as follows:

Class 2 Felony

10 years minimum, 17 years presumptive, 24 years maximum

And that Dangerous Crimes Against Children in the Second Degree, pursuant to

sub-section D "attempt" A term of imprisonment is as follows:

Class 3 Felony

5 years minimum, 10 years presumptive, 15 years maximum

Plaintiff states that he was sentenced under ARS 13-705 "DCAC" in the first

degree, greater than presumptive, and at best (less than a dismissed Count 2) should

have been convicted and sentenced under the second degree and perhaps he would

have if Sheriff's Detective Bentzel and Sgt. Hughes would have disclosed the above

transcript, victim statements, in their report narratives as actually said by the victim.

Plaintiff discovered that Sgt. Hughes intentionally documented additional false

words and false statements in the Executive Summary. Sgt. Hughes also inserted the

words: "abuse", "sexually abused", and "sexual abused", when these words or phrases

were never said by the victim, the plaintiff or any of those interviewed.

In the Sheriff's report, it included a supplemental report in reference to the interview between Dorothy Day and Detective Bentzel. On page 2 it reads, "She said her mother was away in town staying with her Grandmother when she was home with Jose."

In the IA report, on page 8, paragraph 1, it reads, "Dorothy was home alone with Roman, as her mother was on a business trip."

Plaintiff states that the two different statements were similar to others found in the IA report. It's clear that Sgt. Hughes did not care about completing a non-bias report with falsehoods and inaccuracies, for the plaintiff was in jail and could not possibly have known what was documented in the IA report.

Also on page 8, paragraph 3, it reads, "Stacy admitted she had been told by Daisy back in 2005 that Roman was molesting her." Sgt. Hughes created the statement to imply that prior sex acts were told to Plaintiff, Stacy Roman by the victim when in fact the Sheriff's report reveals that Stacy never admitted to anything nor did she say to Sheriff Detective Bentzel that, "Roman was molesting her." Stacy said that, "Several years ago back in approximately 2006, Daisy had come to her and told her that while she was lying on the couch, Jose had come out and lay down next to her, that he had touched her vaginal area and inserted his fingers into it." The two statements are different, for Sgt. Hughes introduced a false version of Stacy's statement.

On page 8, paragraph 6, it reads:

"[Redact] was also able to relay specific, intimate details about the underside of [plaintiff's] scrotum which turned out to be scars from a vasectomy reversal." Plaintiff, Jose Roman Jr states that Sgt. Hughes was wrong for there are no visible scars due to the specialized type of surgery. During the Sheriff's interview, Plaintiff Jose Roman Jr knew that he caught the victim in this lie and insisted that the Sheriff's Office photograph his penis and scrotum as defense evidence. It should be noted that the victim stated the Plaintiff Jose Roman Jr had black and gray unkempt pubic hair. If that was the case and the victim stated she performed masturbation act(s) under the blanket, then if in day time, it would have been hard to see due to light restriction caused by a blanket. If in the evening or night, she would not be able to see scars because it would have been too dark. In both scenarios, unkempt hair would have surely covered any viewable scars. During the Sheriff's interview with plaintiff it reads:

Q- Det. Bentzel, A- Plaintiff

Lines 4138 throught 4149

Q- "Well I can tell you that at least initially when just looking in the room I'm- granted with no-limited lighting and all that stuff- I don't see what was described okay?" "That doesn't mean that you know what I mean okay." "But that's important because now I'm gonna be able to-to further look into that kind of stuff."

A- "Mm-hm."

Q- " And double check the pictures and- when you're looking at a picture on a camera

you don't get the details and those kind of things."

Plaintiff states that today and always his pubic hair has been black in color with no gray, thus proving the victim's description as false.

The Sheriff's photograph's clearly corroborated plaintiff's statements that the victim can not describe the plaintiff's penis and scrotum for she has never seen it or touched it.

Plaintiff Jose Roman Jr states that Sgt. Hughes failed to document plaintiff's exculpatory statements and photograph evidence on the above subject matter that was clearly disclosed in the Sheriff's transcript.

In the IA report on page 8, paragraph 8, it reads: "During the call, Stacy asked Roman to apologize for what he had done to Daisy." "Roman did in fact apologize to Stacy." Sgt. Hughes failed to document the actual statements the plaintiff made for in the Sheriff's confrontation call transcript it reads:

Q- Stacy Roman, A- Plaintiff

Lines 375 through 392

Q- "You don't even think you owe me an apology?"

A- "No."

Q- "So it's okay….."

A- "No."

Q- "…Okay that you did what you did?"

A- "I-Stacy, what did I do? You know that why…"

Q- "You touched her"

A- "……That's why- That's why I even say put (Dorothy) on the phone.  You-you know if (Dorothy)-if (Dorothy) thinks that I tried to touch her and do something too, I mean, Stacy, come on man that is so wrong.  That is so wrong."

Sgt. Hughes clearly did not understand what was said.  There no mention of the victim for the discussion was about Dorothy Day.

On page 9, paragraph 3, there is documented comments made by Goodyear Police Officer K. Shackleford who in 2011 dated the victim.  It reads, "During the interview with Officer Shackleford, he stated he had no knowledge of the sexual abuse as [victim] never shared this information with him while they dated.  Officer Shackleford did recall Daisy telling him that Roman "looks at me kinda creepy," and in another paragraph, Plaintiff Jose Roman Jr is said to "have offered to purchase her breast implants."

Plaintiff states that in 2014 while he was held in custody the above breast implant purchase came to be proven as a false statement, for her mother Stacy, in 2014 had paid for Daisy Asriyan/victim to undergo breast implant surgery.  It's clear that the breats implant comment was one between the victim and her mother and never involved the Plaintiff Jose Roman Jr.

Sgt. Hughes witheld important statements from the IA report that had been

documented by Sheriff's Detective Bentzel in the Sheriff's report, specifically in the

interview between Sheriff's Detective Bentzel and Officer Shackleford that's listed on

pages 3 and 4.  The following are quoted excerpts from paragraphs which read:

"Did she [victim] ever tell you about anything Jose may have done to her that was

inappropriate and he said no."  "He said that she was a habitual liar."

 Later Sheriff's Detective Bentzel asked "...Given what you know f Daisy would

allegations like this surprise you and he said no it would not, she is capable of lying."  He

did say "no one in the family had ever bothered to tell him that the victim had a child or

was married."  Detective Bentzel asked Officer Kyle Shackleford, "I asked him what he

thought about Jose."  "He said he was very quiet and he doesn't see him much outside

of investigations."  "He said he keeps to himself a lot and that he only saw him on a few

crime scenes.  I asked if he had any family time interaction with Jose and the family, He

said just once at a child's party at Peter Piper Pizza.  He said Jose was a very quiet normal

guy but that his wife and mother-in-law were a bit weird.  I asked how so and he said

that they were both concerned about money and very materialistic." (See Exhibit 26)

  On page 9, paragraph 6 it reads:

"Georgiy the ex-husband of [victim] was interviewed.  Georgiy stated he was married to

[victim] and during this time they were married, [victim] would refer to [plaintiff] as a

"Pedophile" and that [victim] did tell him she was sexually abused by [plaintiff], but she

would not share details with him as she was too embarrassed to talk about it."

Sgt. Hughes intentionally concealed a crucial statement made by Georgiy which reads: "She said she was asleep when he came in and confused her with her mother and in some sort of way put his hands on her. He said she was not specific about it as she was always too embarrassed to talk to him about it." "I asked him when did that incident happen and he said she did not tell him any dates, but she told me about it about 3 months after they met in 2006."

Plaintiff Jose Roman Jr and Officer Shackleford similarly referred to the victim as a liar. Plaintiff believes for this reason alone, Sgt. Hughes should have contacted Plaintiff Stacy Roman and family members to obtain statements which were available a few days after plaintiff's arrest. (07/01/13)

Plaintiff Jose Roman Jr became aware that Stacy had the two audio recordings of the confrontation conversations stored on her cell phone. Plaintiff Jose Roman Jr also knew that on July 1, 2013 Stacy had sent them electronically to family members in her attempt to justify why she betrayed her husband before the Sheriff.

Family members and friends who knew the plaintiff could easily tell for themselves that the Plaintiff Jose Roman Jr was asking for Stacy to ask the victim specific questions, while at the same time talking trash to Stacy so she would become angered at the victim. Plaintiff Jose Roman Jr also was angered for Stacy talking to the Sheriff's Office about himself and their family life. (See Exhibit 8)

Plaintiff, Jose Roman Jr states that Sgt. Hughes did not make any reasonable

effort to administratively investigate the complaint for the Goodyear Police Department. Instead, he relied solely on the Sheriff's criminal investigative report.

Plaintiff Jose Roman Jr found in the IA report, on page 10, paragraph 7, that Sgt. Hughes documented that two recorded conversations had taken place on June 26, 2013 and June 27, 2013, when in fact, both conversations took place hours apart on June 27, 2013.

On page 10, paragraph 8, Sgt. Hughes falsely documented the following statement, that reads: "Plaintiff made several statements to include he admitted to having sexual intercourse with the victim when she was 12 years old and that victim was 'coming on to him'."

Plaintiff Jose Roman Jr had the two confrontation conversations recordings transcribed by a certified transcriptionist. The transcripts do not show anywhere the number 12 or the word twelve as well as the words or phrase "coming on to him" as Sgt. Hughes documented as referenced above. The above reveals an additional false statement that he introduced in the IA report. (See Exhibit 28, Transcripts)

Plaintiff states that during the Sheriff's interview with Peter King on May 28, 2013 at 5:20 p.m. at the Southwest Family Advocacy Center located in Goodyear, AZ, Peter King said, "I was by Daisy and asked to go to her house and bring some of the items she left in my garage." "When I arrived, I found that there had been a fight between Joe and Daisy because Joe had called Daisy a name." "Daisy and Stacy asked me to lie and say

that I heard Joe admit to doing things with Daisy, but I never did hear anything." "I was asked to meet with Detective Bentzel and was questioned by him. I also let him know that I was asked to lie by Stacy and Daisy." "Lisa said his police report did not contain my statement about them trying to conspire against Joe Roman."

Plaintiff Jose Roman Jr. was informed that on April 6, 2017 the Maricopa County Sheriff's Internal Affairs interviewed Peter King in reference to the concealed statements and other related issues pertaining to the concealment of his interview from the case report.

Plaintiff states that its unsure if Goodyear Police Professional Standards Unit was present for the Peter King interview which was supplemented by Sheriff's Detective Bentzel. Ever since the Peter King interview, the MCSO audio cannot be found. However, the prior interview with Lisa Anthony just minutes before Peter King was video recorded. Both interviews took place at the Southwest Family Advocacy Center. Plaintiff wonders how or where Sgt. Hughes came up with the false statement he documented when he said he observed the interviews.

As listed above, the Peter King statement goes against what Sgt. Hughes wrote that reads "[Plaintiff] made several statements to include he admitted to having sexual intercourse with the victim when she was 12 years old."

On page 11, paragraph 3, Sgt. Hughes listed bullet quoted statements:
Bullet 1 Reads:

"The whole point of everything is that you needed to know"

Transcript reads (Exhibit 28, page 3 of 20, Lines 2 through 4)

"Well, I-I think, I think we-the whole point of everything is that it was that you needed to know right?"

Bullet 4 reads:

"[Victim] should have reacted, there' no reason."

Transcript reads (Exhibit 28, page 3 of 20, Lines 11 through 13)

"I think if you heard me say what I said, and if she has not reacted, because [victim] would have-should have reacted, you know that."

On page 11, paragraph 5 Sgt. Hughes combined two statements into one statement and listed it as Bullet 2.

Bullet 2 reads:

"Stacy, why would I lie about that, Why would I want to get myself in more trouble."

Transcript reads (Exhibit 28, page 4 of 20, Lines 25 and then continues to page 5 of 20, Lines 1 through 4)

Plaintiff Jose Roman Jr said, "No Stacy, I mean-that's-why would I lie about that?"

Stacy said, "I mean that-exactly. That's what."

Plaintiff Jose Roman Jr said, "Why would I want to get myself in trouble."

Plaintiff Jose Roman Jr states that the confrontation conversation speaks on Count 12 in which was referring to when he was asleep on the family room couch and

the victim had sneaked onto his sofa bed and snuggled, perhaps she thought plaintiff

was her mother. Plaintiff Jose Roman Jr spoke of this in the Sheriff's interview on May

10, 2013, that it was merely accidental. This is corroborated by victim's ex-husband

Georgiy Asriyan who said "She (victim) said she was asleep and he came in and **confused**

**her with her mother** and in some sort of way put his hands on her." (See Sheriff's

report, page 46 for Georgiy's statement)

Georgiy Asriyan's statement clearly supports plaintiff's defense affirmation that

there was no sexual intent for Count 12, Sexual Conduct With a Minor at the Age of 14,

and in fact was a civil/family matter. See *Stephen Edward May V. State of Arizona U.S.*

*District Court of AZ CV14-00409-PHX-NVW*. It should be noted that the two

confrontation conversations were in reference to Count 12 as the Plaintiff Jose Roman Jr

is recorded speaking on the count. (See Exhibit 8)

Plaintiff in Propria Persona proceeded on the review of the Sheriff's report

(13-088305). Included in the Sheriff's report were booking documents (See Exhibit 6

Booking documents and addendum)

In the booking addendum in its first paragraph it reads, "on 05/09/2013, the now

22-year-old victim came forward and reported that the beginning when she was 12

years, the suspect Jose Jesus Roman Jr. with a date of birth of 12/28/1960, molested her

by placing his fingers into her Vagina while she was asleep on the family couch. This

incident was not reported to the police at the time. Instead the victim was moved to the

home of her maternal grandmother where she remained until leaving home to get married."

The quoted statements, specifically the first quoted was falsely reported by Sheriff's Detective Bentzel and similarly by Sgt. Hughes in the IA report. For the statements given by the victim in her interview and by Plaintiff Jose Roman Jr in his interview as well as the interviews of family members clearly reveal that there was never an incident involving Sexual Conduct of a Minor at the Age of 12 or any crime incident around that age. The interviews were in reference to that being Sexual Conduct with a Minor at the age of 14 that Sheriff's Detective Bentzel also charged as Count 1.

In the same booking addendum in the second paragraph it reads, "In which the suspect admitted to the molestation by stating that he did touch the victim when she was 12 years old." Sheriff's Detective Bentzel falsely introduced this statement (See Exhibit 6 addendum) and also a letter by Peter King. (Exhibit 13).

Sgt. Hughes similarly documented this into the IA report.

Plaintiff proceeded to read the Grand Jury transcript which showed that on July 9, 2013 the Maricopa County Attorney's Office presented plaintiff's case before Maricopa County Grand Jury 591, under Grand Jury proceeding No. 591 GJ 142 for 12 counts of Sex Offenses (See Exhibit 3, Direct Complaint and Indictment) which listed seven more counts than were documented in the Sheriff's report and the jail booking documents. (See Exhibit 1, page 17)